IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:14CV179-RLV

| | |
|---|---|
| ANN BOWMAN<br>AMY GOSNELL,<br><br>    Plaintiffs,<br><br>  v.<br><br>COY REID<br>CATAWBA COUNTY<br>DAVID LAIL<br>CATAWBA COUNTY SHERIFF'S OFFICE<br>LIBERTY MUTUAL INSURANCE COMPANY,<br><br>    Defendants. | **MEMORANDUM and ORDER** |

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 14).

**I.    PROCEDURAL AND BACKGROUND FACTS**

    **A.  THE FACTS**

Ann Bowman and Amy Gosnell ("Plaintiffs") are adult female citizens of North Carolina over the age of forty.[1] (Compl., ¶ 6). Plaintiffs bring this action against multiple Defendants alleging gender and age discrimination, tortious interference with contract, and defamation. (Compl., ¶ 1). Defendant Catawba County ("County") is a North Carolina county government. (Compl., ¶ 7). Defendant Catawba County Sheriff's Office ("Office") is a North Carolina law enforcement agency within Catawba County. (Compl., ¶ 8). Defendant Coy Reid ("Sheriff") is a

---

[1] The protected class of individuals under the Age Discrimination in Employment Act includes individuals who are at least forty years of age. 29 U.S.C. §631(a).

citizen and resident of Catawba County and is the duly elected Sheriff of Catawba County. (Compl., ¶ 9). Defendant David Lail ("Lail") is a citizen and resident of Catawba County and is a sworn officer and employee of the Office. (Compl., ¶ 10). Accepting the Plaintiffs' factual allegations as true, Defendant Liberty Mutual Insurance ("Liberty") acted as the surety for Defendants Office, Sheriff, and Lail in their official capacities. (Compl., ¶ 11).

Plaintiffs filed charges with the Equal Employment Opportunity Commission ("EEOC") alleging violation of their rights under Title VII of the Civil Rights Act of 1964 ("Title VII") and under the Age Discrimination in Employment Act ("ADEA"). (Compl., ¶ 12). Plaintiffs have received a right to sue letter from the EEOC and thereafter timely brought this action. *Id*.

Plaintiffs allege that they worked for Defendants County and Sheriff for a number of years in several positions and that they performed their duties and responsibilities satisfactorily. (Compl., ¶ 15). On or about August 31, 2013, Defendant Lail reported to the local news media that the Plaintiffs were charged with a criminal offense. (Compl., ¶ 16). Plaintiffs had reported this fact to their managers pursuant to the procedures of Defendant Sheriff. *Id*. Plaintiffs allege that from that day forward Defendants and various agents of the Defendants "charged and accused Plaintiffs of dishonesty, public drunkenness and improper execution of their duties" to diverse persons in a public manner. (Compl., ¶ 58). According to the Plaintiffs, all of these statements were untrue and were calculated to damage Plaintiffs' reputation. (Compl., ¶¶ 59, 61). On or about September 5, 2013, the Plaintiffs' employment was terminated. Plaintiffs' allege that beginning on that date and continuing to the present, Defendant Sheriff contacted various sheriffs in North Carolina "regarding the charges against the Plaintiffs, details allegedly associated with the event, and the termination of the Plaintiffs' employment" and that many of Defendant Sheriff's

factual statements were "false and known by him to be false at the time the statements were made." (Compl., ¶ 47).

### B. THE CLAIMS FOR RELIEF

Plaintiffs contend that they were discriminated against on account of their gender (First Claim for Relief) and age (Third Claim) in the following ways:

(a) Plaintiffs were disciplined more harshly than younger, male coworkers;

(b) Plaintiffs' personnel issues were released to the news media;

(c) Plaintiffs' employment was terminated;

(d) The filling of their positions with someone outside of the protected class; and

(e) Such other ways as may be proven at trial of this action.

(Compl., ¶¶ 20, 30).

Plaintiffs allege that this discrimination was intentional. (Compl., ¶¶ 23, 31). Plaintiffs further allege that they have lost considerable pay as well as employment and retirement benefits by reason of this discrimination. (Compl., ¶¶ 22, 32). Plaintiffs ask for equitable relief for the gender discrimination claim (Second Claim). (Compl., ¶ 27). These causes of action are governed by 42 U.S.C. §2000e-5(g)[2] and 29 U.S.C. §623.[3] (Compl., ¶¶ 21, 34).

Plaintiffs allege tortious interference with contract as against Defendants Lail (Fourth Claim) and Sheriff (Fifth Claim), arguing that they have suffered a "loss of income, employment

---

[2] "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employee, with or without back pay…or any other equitable relief as the court deems appropriate." 42 U.S.C. §2000e-5(g)(1).

[3] "It shall be unlawful for an employer – (1) to … discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age…" 29 U.S.C. §623(a).

benefits, embarrassment, harm to their professional reputations, and [have] been injured in other ways to be proven at trial" as a result of Defendants' interference with Plaintiffs' employment relationships. (Compl., ¶¶ 41, 42, 51, 52). Plaintiffs allege defamation against Defendants County, Office, and Sheriff (Seventh Claim), alleging that Defendants' statements caused the Plaintiffs to suffer "deep humiliation, mental agony, and chagrin" and that they were greatly and seriously injured in their names and professional reputations. (Compl., ¶ 63). Plaintiffs have alleged that they have a right to punitive damages from Defendants County, Office, Sheriff, and Lail (Sixth Claim). (Compl., ¶ 56).

Defendants have moved to dismiss Plaintiffs' claims for discrimination, tortious interference with contract, defamation, and punitive damages and have further argued that Defendants County and Sheriff are not proper parties to this action. (Doc. 14).

## II. STANDARD OF REVIEW

The Court can dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss pursuant to Rule 12(b)(6), this Court must "take the facts in the light most favorable to the plaintiff," but "need not accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). Although "heightened fact pleading of specifics" is not required for a complaint to survive a motion to dismiss under Rule 12(b)(6), the allegations must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering the plausibility of a claim, the Court must "draw on its judicial experience and common sense" to determine whether the well-pleaded facts of the complaint "permit the Court to infer more than the

mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must disregard conclusory statements unsupported by factual allegations, but "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. Determining whether a claim states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.[4]

## III. DISCUSSION

For the reasons discussed herein, this Court concludes that neither Catawba County nor the Catawba County Sheriff's Office are proper parties to this action and all claims as against them should be dismissed. This Court further concludes that all claims against Defendants Sheriff and Lail should be dismissed for failure to state a claim. Accordingly, Defendant Liberty is also dismissed from this action as the insurer.

### A. Catawba County is not a proper party to this action.

Plaintiffs contend that they were employees of both the Catawba County Sheriff's Office and Catawba County and that the County is therefore liable for suit. Defendants contend that Catawba County is a distinct legal entity from the Sheriff's Office and is not a proper party to this action. This Court agrees with Defendants.

The case law is well settled on this point. Based on a decision of the Supreme Court, a county can be held liable for acts over which the county has final policymaking authority. *City of*

---

[4] According to the Plaintiffs, the standard of review rests on whether the Defendants can prove beyond a doubt that the Plaintiffs can show no set of facts which would support their claims, arguing that this has long been the standard in the Fourth Circuit. (Doc. 18 at 7-8). Indeed, this may have long been the standard in the Fourth Circuit (such as in the 1970s from where Plaintiffs pull their citations), but this "famous observation has earned its retirement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 563 (2007) (The [no set of facts] phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard.").

*St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Whether the county has final policymaking authority in a specific area is a question of state law. *Id.*[5]

"Under North Carolina law, the Office of Sheriff is a legal entity, established by the state constitution and state statutes, separate and distinct from the Board of County Commissioners because a sheriff is elected by the people, not employed by the county." *Little v. Smith*, 114 F.Supp.2d 437, 446 (W.D.N.C. 2000) (citing N.C. Gen. Stat. §162-1 (2000)). Plaintiff argues that because the County was involved during the EEOC administrative proceedings there "appears to be some interconnection" between the two entities. (Doc. 18 at 3). But North Carolina courts have repeatedly said that there is not a connection that can render the County liable because the Sheriff has final policymaking authority over personnel decisions.[6] *See Clarke v. Burke County*, 450 S.E.2d 747, 749 (N.C. Ct. App. 1994) ("A deputy is an employee of the sheriff, not the county. Therefore, any injury resulting from [the deputy sheriff's] actions in this case cannot result in liability for Burke County"); *Landry v. N. Carolina*, No. 3:10-CV-0585-RJC-DCK, 2011 WL 3683231, at *5 (W.D.N.C. Mar. 11, 2011) *report and recommendation adopted*, No. 3:10-CV-RJC-DCK, 2011 WL 3682788 (W.D.N.C. Aug. 23, 2011) (dismissing the county as a party to the lawsuit when the wrongs were committed by the sheriff or his employees); *Breen v. Mecklenburg*

---

[5] This renders Plaintiffs' citation to *Fricaro v. Priddy* unpersuasive. 514 F.Supp. 191 (M.D.N.C. 1981). The relationship between the two entities in that case differs from the relationship between the Sheriff and the County in this case. North Carolina courts have already undertaken a detailed analysis of the relationship between the Sheriff and the County and have repeatedly determined that a county is not liable for a sheriff's actions.

[6] Each elected sheriff "has the exclusive right to hire, discharge, and supervise the employees in his office." N.C. Gen. Stat. § 153A-103. "The sheriff may not delegate to another person the final responsibility for discharging his official duties…" N.C. Gen. Stat. §162-24. Plaintiffs contend that this statute does not preclude a possible work sharing agreement between the Sheriff's Office and Catawba County, but the Plaintiffs are unable to point to any case law supporting this argument, an argument that is starkly antithetical to what North Carolina courts have actually said. "§153A-103 'gives every indication that the control of the employees hired by the sheriff is vested exclusively with the sheriff.'" *Knight v. Vernon*, 214 F.3d 544, 552 (4th Cir. 2000) (quoting *Peele v. Provident Mut. Life Ins. Co.*, 368 S.E.2d 892, 894 (N.C. Ct. App. 1988).

*County*, No. 3:05-CV-148-C, 2006 WL 2830956 at *3 (W.D.N.C. 2006) ("There is a long line of cases directly on point…which hold that a county cannot be held liable for constitutional or other civil wrongs committed by a sheriff or his employees.").

The harms that Plaintiffs allege were done to them were done exclusively by the Sheriff and his deputies, not by Catawba County. Accordingly, all claims as against Catawba County are hereby dismissed with prejudice.

**B. The Catawba County Sheriff's Office is not a proper party to this action.**

State law dictates whether a government agency has the capacity to be sued in federal court. *Avery v. Burke*, 660 F.2d 111, 113-14 (4th Cir. 1981). Defendants argue that there is no North Carolina statute that authorizes suit against a county sheriff's office. Plaintiffs contend that the Sheriff's Office is an employer within the meaning of Title VII and the Age Employment Discrimination Act and therefore can be sued. 42 U.S.C. §2000(b); 29 U.S.C. §630(b)[7]. This Court finds that the Catawba County Sheriff's Office is not a proper party to this action.

Plaintiffs attempt to distinguish *Parker v. Bladen County*, cited by Defendants, as involving a §1983 claim rather than a claim with statutory support under Title VII and the ADEA. 583 F.Supp.2d 736 (E.D.N.C. 2008). Such an argument would be more persuasive if the Defendants had not additionally cited cases involving employment discrimination, including Title VII. *See, e.g., Efird v. Riley*, 342 F.Supp.2d 413, 420 (M.D.N.C. 2004) (in a Title VII and retaliation employment dispute, "the sheriff, rather than the department or associated county, may be held liable for employment law violations within the department. The court will therefore grant Defendants' motion to dismiss the [sheriff's office] as a defendant."). This does not in itself render

---

[7] "The term 'employer' means a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 29 U.S.C. §630(b).

the Plaintiffs with no avenue for recovery in their employment discrimination action, for *Efird* also held that the sheriff can be regarded as the plaintiffs' employer within the meaning of Title VII when sued in his official capacity, as he is here. *Id*. at 420-21. Hence, there is statutory and case law support for the Plaintiffs to bring their cause of action against the Sheriff in his official capacity, but not against the Catawba County Sheriff's Office.

There is a substantial body of North Carolina and Fourth Circuit case law that precludes suit against sheriff's offices and sheriff's departments for both §1983 claims and claims of employment discrimination. See *Revene v. Charles Co. Commissioners*, 882 F.2d 870, 874 (4th Cir. 1989) (The claim against the "'Office of Sheriff' was rightly dismissed on the basis that this 'office' is not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which this 'office' is simply an agency."); *Simpson v. Union County Sheriff*, No. 3:05-CV-408-1-MU, 2006 WL 1367380, at *2 (W.D.N.C. 2006) ("To the extent Plaintiff's intended defendant is the office of the sheriff of Union County his Complaint fails to state a claim because the office of the sheriff is not a separate legal entity capable of being sued.").[8] Accordingly, Plaintiffs' suit against the Catawba County Sheriff's Office is dismissed with prejudice as to all counts.

### C. DISCRIMINATION CLAIMS

The elements of a *prima facie* case of discrimination under Title VII and the ADEA are: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment

---

[8] *See also Efird, supra*; *Parker*, 583 F.Supp.2d at 740 (Sheriff's department cannot be sued where there is no statute in North Carolina authorizing suit against the Sheriff's Department); *Moore v. City of Asheville*, 290 F.Supp.2d 664, 673 (W.D.N.C. 2003) (claims against the Asheville Police Department dismissed because it "is not a person" and therefore cannot be sued) (citing *McPherson v. Bank*, 81 S.E.2d 386 (N.C. 1954) (internal citations omitted).

action[9]; and (4) different treatment from similarly situated employees outside the protected class. *McCallum v. Billy Graham Evangelistic Ass'n*, 824 F.Supp.2d 644, 653 (W.D.N.C. 2011) (citing *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Different treatment can be shown by either the plaintiff's position being filled by a similarly qualified applicant outside the protected class[10] or by the plaintiff being disciplined more severely for conduct similar to that for which a non-protected employee received more lenient treatment. *See, e.g., Dugan v. Albemarle County Sch. Bd.*, 293 F.3d 716, 721 (4th Cir. 2002); *Brinkley v. Harbor Recreations Club*, 180 F.3d 598, 607 (4th Cir. 1999).

Plaintiffs again seem to misunderstand the pleading burden with respect to their discrimination claims, stating that "at this stage of the case, identifying the basic issues is all that is required." (Doc. 18). In the wake of *Twombly* and *Iqbal*, *supra*, the standard of pleading is greater. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Plaintiffs are required to allege enough facts to make it plausible that discovery will reveal evidence of forbidden activity. *Id*. at 556. Plaintiffs fail to do so.

Plaintiffs start off on the right foot by adequately alleging that they are within the protected class for both Title VII gender and ADEA claims. They then adequately allege with factual support that their employment was terminated. Elements (1) and (3) above are satisfied. But elements (2) and (4) are still necessary for a *prima facie* case, and to satisfy those the Plaintiffs engage in a

---

[9] An adverse employment action is "a tangible employment action constituting a significant change in employment status, such as hiring, firing…" *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998).

[10] Or, in the case of ADEA claims, a "substantially younger" worker who may still be within the ADEA protected class. *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 430 (4th Cir. 2000).

"formulaic recitation of the elements of a cause of action." They allege that they were performing their jobs satisfactorily, but there is evidence in their own complaint that undermines the plausibility of this assertion. The Plaintiffs admit that they reported being charged with a criminal offense to their managers and were fired shortly thereafter. (Compl., ¶ 16). As the Plaintiffs' employer, Defendant Sheriff has a legitimate expectation that Plaintiffs not be charged with a criminal offense.[11]

To demonstrate disparate treatment, the Plaintiffs allege the following: Plaintiffs were disciplined more harshly; Plaintiff's personnel issues were released to the news media[12]; Plaintiffs positions were filled with someone outside the protected class; and such other ways as can be proven at trial. This is exactly the sort of threadbare recitation of elements of a cause of action that *Twombly* and *Iqbal* forbid. There are simply no factual allegations here beyond generic conclusory statements that can lead this Court to a determination that it is plausible that Defendants discriminated in the manner complained of. Plaintiffs claim that the details regarding comparators are not available to them until discovery, but this Court is not in the business of facilitating fishing

---

[11] Certainly, it is axiomatic that Plaintiffs are innocent until proven guilty. However, because employment is generally at-will in North Carolina, meaning that an employee may ordinarily be discharged without reason, Plaintiffs bear the burden of showing that they were discharged specifically for a discriminatory reason. *Moser v. Driller's Service, Inc.*, 988 F.Supp.2d 559, 565 (W.D.N.C. 2013) (citing *Coman v. Thomas Mfg., Co.*, 381 S.E.2d 445, 446 (N.C. Ct. App. 1989) (internal citations omitted). The fact that the Plaintiffs had been charged with a crime undermines the plausibility that they would not have been terminated but for discrimination, especially since Plaintiffs provide no factual background for the alleged discrimination.

[12] The only factual allegation regarding this claim is that Defendant Lail reported to the news media that Plaintiffs were charged with a crime. This information is both admitted by Plaintiffs and in the public record, and there is nothing inherently discriminatory in this action that can be gleaned from the Plaintiffs' Complaint.

expeditions when there is no plausible expectation of success.[13] Accordingly, Plaintiffs' First, Second, and Third Claims for Relief are dismissed.

### D. TORTIOUS INTERFERENCE WITH CONTRACT

To state a claim for tortious interference with contract, a plaintiff must allege: (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) defendant knew of the contract; (3) the defendant intentionally induced the third person not to perform the contract; (4) and in doing so acted without justification; (5) resulting in actual damage to the plaintiff. *Mkt. Choice, Inc., v. New England Coffee Co.*, No. 5:08-CV-90, 2009 WL 2590651, at *7 (W.D.N.C. August 18, 2009) (citing *Embree Constr. Group, Inc. v. RAFCOR, Inc.,* 411 S.E.2d 916, 924 (N.C. 1992). In order to establish a tortious interference with contract claim, the Plaintiffs must show that they had a contract with a third party. *Swaim v. Westchester Acad.*, 208 F.Supp.2d 579, 588 (M.D.N.C. 2002) *aff'd sub nom. Swaim v. Westchester Acad., Inc.*, 60 F.App'x 944 (4th Cir. 2003). The Court finds that Plaintiffs failed to plead tortious interference with contract.

Plaintiffs' allegations for tortious interference with contract as against Defendant Sheriff are too bare to go forward. Plaintiffs' allegations lack adequate specificity, merely referring to "various Sheriff's Departments and/or Sheriffs in the State of North Carolina." (Compl., ¶47). Plaintiffs do not specifically allege a valid contract with any third party, let alone a contract that Defendant Sheriff intentionally induced a third party not to perform. As such, Plaintiffs fail to

---

[13] Further, Plaintiffs make no argument as to why they do not have these details. If Plaintiffs feel comfortable alleging that they were treated differently than younger coworkers, for instance, they should at least be able to allege an example of where such disparate treatment occurred. In essence, this claim by the Plaintiffs that they require discovery to furnish even the most basic factual underpinning for their allegations is an admission that they are merely fishing for evidence which may or may not exist, and as to which they have supplied no reason to believe it exists beyond bare assertions.

plead even a single element of this cause of action.[14]  Further, in *Jackson v. Mecklenburg Cnty., N.C.*, this Court found that a "statement of opinion" was not enough to allege that a defendant's intent was to bring about a termination.  No. 3:07-CV-218, 2008 WL 2982468, at *8 (W.D.N.C. July 30, 2008).  In this case, Plaintiffs allege that Defendant Sheriff's "conduct was performed for the express purpose of preventing other departments from hiring the Plaintiffs" but do not provide any other factual support or explanation beyond this conclusory allegation. (Compl., ¶50).

Plaintiffs' allegations for tortious interference against Defendant Lail also suffer from fatal defects.  Plaintiffs allege that Defendant Lail contacted the local news media on or about August 31, 2013 about the pending charges against the Plaintiffs with the express purpose of causing the termination of Plaintiff's employment and that this caused them injury.[15]  (Compl., ¶¶ 37, 40, 42).  No further factual allegations are made regarding what false statements Defendant Lail actually made to the media.  In *Jackson*, this Court dismissed claims for tortious interference with contract where the plaintiffs failed to identify the content or actual occurrence of false statements to cause termination of plaintiff's contract. No. 3:07-CV-218, 2008 WL 2982468, at *8 (W.D.N.C. July 30, 2008) ("The complaint does not allege facts identifying the content, time, or actual occurrence of false statements and fails to put [defendants] on notice of the basis of [plaintiff's] claim.  This failure to plead facts instead of conclusory allegations makes [plaintiff's] claim of tortious interference with contract against [defendants] merely speculative, and it fails as a matter of law.")

---

[14] Plaintiffs argue that the Court should apply the logic of this cause of action to the "failure to hire realm as well." (Doc. 18 at 7). Not only do the Plaintiffs fail to cite case law to support this proposition, they fail to even put forth an argument for why the court should so extend this doctrine.  And even if they did, Plaintiffs do not point to any specific third party that failed to hire them because of Defendant Sheriff's actions.

[15] As against Defendant Sheriff, this conclusory allegation lacks specific factual support and is therefore insufficient under *Jackson*.

It is not clear from the Complaint how Defendant Lail's comments to the media (whatever they may have been) could have been the cause of Plaintiff's termination when those comments allegedly regarded the crime that Plaintiffs had been charged with, a crime that Plaintiffs had already admitted to their managers. Plaintiffs even admit that they do not know the details of that conversation beyond what the media reported, and it is difficult to see how the Plaintiffs could have been fired over statements that the media did not even report on. (Doc. 18 at 5). Nor do the Plaintiffs allege a lack of justification on Defendant Lail's part in talking to the media about a pending charge, something that law enforcement agents do from time to time in the interest of transparency with the public. Nor, as stated above, do they allege intent beyond a mere statement of opinion. As such, Plaintiffs' claim for tortious interference with contract as against Defendant Lail is dismissed.[16]

### E. DEFAMATION CLAIMS

To state a claim for defamation, a plaintiff must allege that (1) the accused party made false and defamatory statements of or concerning the plaintiff; (2) which were published to a third person; (3) causing injury to the plaintiff's reputation. *Smith-Price v. Charter Behavioral Health Sys.*, 595 S.E.2d 778, 783 (N.C. Ct. App. 2004) (quoting *Tyson v. L'Eggs Products, Inc.*, 351 S.E.2d 834, 840 (N.C. Ct. App. 1987). "Merely referring to statements made by 'Defendants' to 'third parties'…generally…is inadequate to state a claim for defamation." *Diagnostic Devices, Inc. v. Pharma Supply, Inc.*, No. 3:08-CV-149-RJC-DSC, 2009 WL 3633888 at *13 (W.D.N.C. Oct. 30, 2009). The complaint must set forth who said what to whom, as well as when and where the defamatory statements were made. *Id*. *See also Andrews v. Elliot,* 426 S.E.2d 430, 432 (N.C. Ct. App. 1993). "When pleading a defamation claim, the alleged defamatory statement made or

---

[16] Plaintiffs' opposition brief responds only to Defendants' argument that Defendant Lail enjoys qualified immunity. The Court need not reach that question today.

published by the defendant need not have to be set out verbatim in the plaintiff's complaint if alleged 'substantially in *haec verba*, or with sufficient particularity to enable the court to determine whether the statement was defamatory.'" *Esancy v. Quinn*, No. 5:05-CV-RLV, 2006 WL 322607, at *4 (W.D.N.C. Feb. 10, 2006) (quoting *Stutts v. Duke Power Co.*, 266 S.E.2d 861, 866 (N.C. Ct. App. 1980). Allegations of time and place are material for purposes of testing the sufficiency of a pleading and should be plead in the complaint. *Id*. (citing Fed. R. Civ. P. 9(f)).

Plaintiffs do not plead defamation with adequate specificity. They claim that Defendants have made statements to Plaintiffs' "friends, acquaintances, and business associates throughout North Carolina" and that Defendants have defamed them "in the presence of diverse persons." (Compl., ¶¶ 58, 62). These are generalized claims that could mean just about anybody.[17] There is also no indication in the Plaintiffs' Complaint as to where this alleged defamation occurred, and only a vague indication as to the content of the defamation. In *Esancy*, this Court dismissed claims for defamation against "various other customers or entities with which the Plaintiff was involved, including but not limited to the Bank of Granite." No. 5:05-CV-RLV, 2006 WL 322607, at * 5 (W.D.N.C. Feb. 10, 2006). If anything, Plaintiffs' allegation in this case is even less specific than the allegations in *Esancy* in that Plaintiffs do not name a single third party that Defendants talked to. Accordingly, Plaintiffs' seventh claim for relief for defamation is dismissed.

### F. PUNITIVE DAMAGES

Because the Court dismisses all of the preceding causes of action, the claim for punitive damages is also dismissed.

### IV. ORDER

---

[17] Plaintiffs' contention that they withheld the names of the persons contacted to minimize the intrusion into their lives is unpersuasive and does not release the Plaintiffs from their burden to state a claim.

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss is hereby **GRANTED** in full.

Signed: July 24, 2015

Richard L. Voorhees
United States District Judge